

# NUMBER 13-22-00209-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF G.J.A. AND H.L.A., CHILDREN.

### On appeal from the 36th District Court
### of San Patricio County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Longoria**

Appellants C.D. (Mother) and L.A. (Father) appeal from the termination of their parental rights to their children, G.J.A. and H.L.A., who were four years old and three years old respectively at the time of trial.[1] In her appeal, Mother argues that the evidence was insufficient to support the trial court's findings that: (1) there exists a statutory predicate to terminate her parental rights under § 161.001(b)(1)(D), (E), (N), (O), or (P),

---

[1] To protect the identity of the minor children, we refer to the children and their relatives by their initials or an alias. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(a).

and (2) it is in the best interests of the children to terminate her parental rights. Father, in his appeal, argues the evidence is insufficient to support a finding that termination of his parental rights was in the best interests of the children. We affirm.

## I. BACKGROUND

### A. Department History

On July 2, 2020, appellee the Texas Department of Family and Protective Services (the Department) received a "priority one report alleging neglectful supervision and physical neglect" of G.J.A. and H.L.A.[2] The report also alleged physical abuse of the children by their maternal great-grandfather, whom the children and Mother were living with. The children were described as "malnourished with sunken eyes and bony faces" and unclean. Father was not residing with Mother and the children at that time. Father was not cooperative with the investigation and did not provide any information to help locate Mother and the children. On July 10, 2020, Father reported that Mother took his vehicle and the children. Father reported that the vehicle did not have car seats, Mother was under the influence of drugs, and a firearm might be in the vehicle. The following day, the Department located Mother and the children, but no further action was taken at that time.

Additional reports were received by the Department regarding neglectful supervision by Mother and alleging Mother was under the influence of drugs on July 13, 2020, and July 20, 2020. As a result of the allegations and reports and the subsequent

---

[2] The report also included minor children A.M.C. and T.B.C., who are Mother's children with C.C. In a separate proceeding, C.C. was appointed managing conservator of A.M.C. and T.B.C. Neither child is part of this appeal, and C.C. is not a party to this appeal.

arrest of Mother, the Department removed the children. After filing its "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship" on July 23, 2020, the Department was named temporary managing conservator of the children on July 24, 2020.

With a goal of reunification, family service plans were developed for Mother and Father containing numerous tasks for each parent. Mother's plan required her to: (1) obtain and maintain employment; (2) attend individual counseling; (3) attend substance abuse counseling; (4) complete a parenting course; (5) participate in random drug screens; (6) participate in supervised visitation; (7) provide a safe and protective home environment; (8) cooperate with the Department; (9) pay child support as ordered by the trial court; and (10) complete domestic violence counseling. Father's plan required him to: (1) complete substance abuse counseling; (2) participate in random drug screens; (3) complete a parenting course; (4) participate in supervised visitation; (5) provide a safe and protective home environment; (6) cooperate with the Department; (7) pay child support as ordered by the trial court; and (8) complete domestic violence counseling.

An adversary hearing was conducted over the course of three days in August 2020, after which the trial court found that "there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person entitled to possession." The trial court continued the Department as managing conservator of the children and ordered that Mother and Father have temporary visitation with the children. Both parents were ordered to comply with their service plans. Multiple status hearings and permanency hearings were held. The trial court found that neither Mother nor Father

3

had "demonstrated adequate and appropriate compliance with the service plan." The trial court also suspended visitation for both parents pending urinalysis and hair follicle drug testing.

## B. Bench Trial

The bench trial occurred on March 28, 2022. The Department remained as temporary managing conservator of the children, and the children were in a foster care placement together.

The following witnesses testified.

### 1. Rochella Thomas

Rochella Thomas, a Department supervisor, testified that she oversaw this case. The caseworker assigned to the case was unavailable to testify due to illness. In her supervisory role, Thomas testified that she "overlook[s] and review[s] the actions of [her] individual case workers," including reviewing the Department's file and information related to the case. Thomas testified about the significant history with the Department in this case, including the July 2020 reports received.

Regarding drug tests, Thomas testified that neither Mother nor Father were consistent in their drug testing and missed many scheduled drug screens. When Mother and Father did participate in their drug screens, they tested positive on several occasions. Mother tested positive for "amphetamines, hydrocodone, [and] methamphetamines" in her hair follicle tests; Father tested positive for "amphetamines, methamphetamines, marijuana, marijuana metabolite, opiates, codeine, [and] hydrocodone" in his hair follicle screen. Because of the positive drug test results, Mother's and Father's visitation with the

4

children was suspended pending negative drug screens, which did not occur prior to trial.

Thomas explained that Mother was not compliant with her family service plan. Specifically, she explained that Mother was incarcerated at the time of trial, and accordingly the Department could not confirm that she was maintaining employment. Mother completed some individual counseling and substance abuse classes, but due to her positive drug screens, she was required to complete additional classes which she did not do. Mother did not complete the parenting program, did not participate in all of her drug screens, and tested positive when she did participate. Thomas also explained that Mother did not attend domestic violence counseling. Thomas testified that prior to Mother's incarceration, the home Mother lived in was not a safe or healthy place for the children. Photographs of the home where Mother was residing with the children were admitted into evidence showing unsanitary conditions, a used syringe, a knife within reach, and general clutter and filth.

Thomas discussed Father's participation in his family plan, as well. Father also completed some substance abuse counseling but did not participate in the additional required counseling after he tested positive on his drug test. Father also did not complete parenting classes; though he attended some, Thomas explained that Father "did not finish the homework that he was assigned, and then his behavior at the facility, it became, I guess, very threatening . . . ." Father did not provide his address to allow the Department to determine if his residence would be a safe environment for the children, and he did not complete domestic violence counseling, though Thomas stated Father "self-reported" attending one class.

Thomas also discussed the children's current placement in foster care. She testified that the children were thriving in their placement and all of their needs were being met. Thomas stated that the foster parents would like to adopt the children.

On cross-examination, Thomas explained that Father's demeanor was threatening and manipulative, and she indicated Father would yell at her coworkers.

### 2. Candyce Emmerich

Candyce Emmerich and her husband Gary Davis are the foster parents of G.J.A. and H.L.A. Emmerich testified that the children are doing well in her home, they are enrolled in local "educational academies," participate in extracurricular activities, and appear to be comfortable and happy. She stated that if she and her husband were given the opportunity, they would adopt the children.

### 3. Mother

Mother testified that while she did not sign her family plan of service, she was aware of its requirements. She testified that she completed individual counseling, and to her knowledge, she also completed her substance abuse counseling, explaining that she was unaware of additional requirements after testing positive on her drug screen. While she was incarcerated at the time of trial, she explained that she worked as a home health provider and believed her job would be available to her when she was released. She testified that she had several negative drug tests before the positive hair follicle test.

Mother also disagreed with the representation that her children were "dirty" or "malnourished," explaining that they ate well and that the day they were removed from her care, they had been playing outside with a water hose. She considers herself an

6

attentive and protective Mother, testifying that she had never hurt her children. In looking at the photographs entered into evidence, Mother testified that the cluttered, dirty, and unsafe rooms pictured were not where her children were allowed, nor did they sleep in the dirty beds or use the unsanitary and unsafe bathroom.

When asked to explain the report from Father that she stole his vehicle and took the children while under the influence of drugs, Mother testified that she had Father's permission to use the vehicle and she left because Father had gotten violent with her, as he frequently had in their relationship.

She requested that she be given the opportunity to have her children back when she was released from incarceration.

On cross-examination, Mother admitted that she had not done the parenting courses as required by her service plan, disagreed with the assessment that she had not completed individual counseling, agreed that she had some history of unstable housing, and stated she was not currently employed due to incarceration for "failure to appear on [her] assault on an officer" charge. As it related to her drug use, Mother testified that she had tested positive for methamphetamines, but that "to [her] knowledge," methamphetamines were not addictive to her. Mother stated that she did not have a problem with using drugs. In regard to domestic violence counseling, Mother testified that she had "called and called and called" for counseling but did not receive a call back.

4.      **Mary Ellen Ruiz**

Mary Ellen Ruiz, a court appointed special advocate (CASA) volunteer, testified that her involvement with the case began August 3, 2020. She believes the children "have

grown leaps and bounds" in their placement with their foster parents. She testified that the children were "gaunt and sunken eyed" when first removed, but that they are thriving now. The foster care placement is meeting all the children's needs "and then some." Based on her interactions with the children, Ruiz testified that she believes the children feel they are the children of their foster parents, and that they are already part of that family. Based on conversations she has had, she explained that the foster parents would attempt to reestablish a relationship with the children's half-siblings as well. She testified that the parental rights of Mother and Father should be terminated as continuing visitation with the parents "brings emotional burdens to both" children. Ruiz does not believe any of the concerns regarding Mother and Father at the time of removal have been alleviated as of the date of trial.

The trial court terminated both Mother and Father's parental rights as to G.J.A. and H.L.A. Both parents appealed.

## II. MOTHER'S ARGUMENTS

Mother contends the evidence is insufficient to support: (1) termination findings under § 161.001(b)(1)(D), (E), (N), (O), or (P); and (2) the finding that termination of her parental rights is in G.L.A. and H.L.A.'s best interest.

### A. Standard of Review & Applicable Law

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (first

8

citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); and then citing *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.)). Therefore, termination of the parent-child relationship must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Before terminating the parent-child relationship, the trial court must find by clear and convincing evidence that the parent committed one of the acts prohibited by §§ 161.001(b)(1)(A)–(T) of the Texas Family Code and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)(A)–(T), (b)(2); *In re J.L.*, 163 S.W.3d at 84.

The "clear and convincing" intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *Porter v. Tex. Dep't of Protective & Regul. Servs.*, 105 S.W.3d 52, 57 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). It is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). In our legal sufficiency analysis, we must view the evidence in the light most favorable to the finding, we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d at 266). However, this does not mean that we must disregard all evidence that does not support the finding. *In re J.F.C.*, 96 S.W.3d at 266.

9

Because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.* If we determine that no reasonable trier of fact could form a firm belief or conviction that the matter that must be proven is true, we must hold the evidence to be legally insufficient and render judgment in favor of the parent. *Id.*

In a factual sufficiency review, "[w]e must determine whether, on the entire record, a fact[]finder could reasonably form a firm conviction or belief that the parent violated a provision of [§] 161.001[(b)](1) and that the termination of the parent's parental rights would be in the best interest of the child." *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.—Fort Worth 2008, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002)). Under this standard, we consider whether the "disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266. If we conclude that "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

A parental rights termination decree must be based on at least one predicate ground listed in § 161.001(b)(1). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). If multiple predicate grounds are found by the trial court, we affirm based on any one ground because only one is necessary for termination of parental rights. *In re T.N.F.*, 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied). Therefore, to prevail on appeal, a party must challenge the sufficiency of each affirmative finding of a predicate ground for

termination or at a minimum challenge the best interest finding. *In re S.N.*, 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.). However, if parental rights are terminated pursuant to § 161.001(b)(1)(D) or (E), we must determine whether the evidence supports that finding even if there are other grounds for termination. *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) ("[D]ue process . . . requires a heightened standard of review of a trial court's finding under [§] 161.001(b)(1)(D) or (E), even when another ground is sufficient for termination. . . .").

**B.      Sufficiency of the Evidence**

**1.      Section 161.001(b)(1)(D)**

Section 161.001(b)(1)(D) provides for termination of parental rights if there is clear and convincing evidence supporting a finding that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775–76 (Tex. App.—Texarkana 2003, no pet). In this context, the child's environment refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home*. In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards." *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We examine evidence of the parent's conduct and the child's living environment before the time the Department removes the child. *Ybarra v. Tex. Dep't of Human Servs.*,

11

869 S.W.2d 574, 577 (Tex. App.—Corpus Christi–Edinburg 1993, no writ); *see also In re A.G.*, No. 07-17-00440-CV, 2018 WL 1999171, at *5–6 (Tex. App.—Amarillo Apr. 27, 2018, pet. denied) (mem. op.). Parental and caregiver illegal drug use and drug-related criminal activity supports the conclusion that the child's surroundings endanger their physical or emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Subsection (D) permits termination based on only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied); *see also In re L.S.*, No. 13-18-00632-CV, 2019 WL 1474521, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 4, 2019, pet. denied) (mem. op.).

The evidence shows that Mother used illegal drugs prior to the removal of the children and during the pendency of this case. Thomas testified that the Department received reports regarding Mother's drug use, and Father notified the Department that Mother was driving the children in a vehicle while under the influence of drugs. Additionally, Thomas testified regarding an incident where Mother "appeared to be on high-level drugs as she was displaying erratic behavior." The testimony regarding Mother's continued drug use supports an inference that the children's physical and emotional well-being were endangered. *See In re S.D.*, 980 S.W.2d at 763.

In addition to the drug use, the evidence also showed that Mother allowed the children to live in a dirty and unsafe home environment. While Mother disputes that the children had access to the rooms that were photographed inside of the home, there is no doubt that the children resided in the home and were subjected to the conditions of that environment. Given the photographs admitted into evidence and the testimony of

Thomas, the trial court could have reasonably resolved that disputed evidence in favor of its finding. *See In re J.F.C.*, 96 S.W.3d at 266.

We conclude there is clear and convincing evidence that Mother knowingly placed or knowingly allowed G.J.A. and H.L.A. to remain in conditions or surroundings which endangered the physical and emotional well being of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D). We also conclude that, based on the entire record, a factfinder could reasonably form a firm conviction or belief that Mother allowed the children to remain in conditions that endangered their physical or emotional well-being. *In re M.C.T.*, 250 S.W.3d at 168. We overrule Mother's first issue as it relates to subsection (D).

**2. Section 161.001(b)(1)(E)**

Section 161.001(b)(1)(E) permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). Under subsection (E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Rather, "endanger" means to expose the child to loss or injury or to jeopardize his emotional or physical well-being. *Id.*

The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.— Fort Worth 2011, pet. denied). Courts may consider parental conduct that did not occur in the child's presence, including that which occurred before the child's birth or after

13

removal from a parent's care. *See In re J.T.G.*, 121 S.W.3d at 125–26; *see also In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.). Thus, evidence of illegal drug use by a parent and its effect on the parent's life and ability to parent may establish an endangering course of conduct under subsection E. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *In re K-A.B.M.*, 551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.) ("A parent's use of drugs may qualify as an endangering course of conduct.").

The evidence showed that upon G.J.A. and H.L.A.'s removal due to reports of Mother's neglect and drug use, Mother failed to complete her substance abuse counseling as required by her service plan, failed to appear for numerous drug tests, refused to provide samples for several hair follicle tests, and tested positive for methamphetamines. Mother testified that she was not using drugs at the time of the trial; however, she was incarcerated at that time. Further, Mother testified that she did not believe she had any issue with drugs and that methamphetamines were not addictive to her, which is why she did not attend any narcotics anonymous meetings or seek additional help in getting clean. However, during the time prior to incarceration, she showed no indication of discontinuing her drug use given her positive drug test results, missed drug screens, and refusals. Mother also testified to domestic violence at the hands of Father. While she testified that she and Father had not seen each other in "two years," her

14

testimony made clear that the children had been exposed to domestic violence when in Mother's care. Evidence of illegal drug use supports a conclusion that a child's surroundings endanger his or her physical or emotional well-being. *See In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (finding mother violated subsection (D) and (E) when she exposed children to domestic violence, placed them in an environment of drug abuse, and refused to participate in her child protective services service plan).

We conclude there is clear and convincing evidence to support termination under § 161.001(b)(1)(E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). We also conclude that, based on the entire record, a factfinder could reasonably form a firm conviction or belief that Mother engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being. *In re M.C.T.*, 250 S.W.3d at 168. We overrule Mother's first issue as it relates to subsection (E).[3]

### 3.    Best Interest

The Department is also required to prove by clear and convincing evidence that termination of Mother's parental rights is in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d 101, 116 (Tex. 2014). There is a "strong presumption" that the best interest of the child will be served by preserving the

---

[3]    We have concluded that there exists legally and factually sufficient evidence to terminate Mother's parental rights under § 161.001(b)(1)(D) and (E). *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) ("[D]ue process . . . requires a heightened standard of review of a trial court's finding under [§] 161.001(b)(1)(D) or (E), even when another ground is sufficient for termination . . . ."). We therefore need not address the remaining grounds as we can affirm termination based on any one ground. *In re T.N.F.*, 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied); *see* TEX. R. APP. P. 47.1.

parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, the presumption is not irrebuttable; the Texas Family Code and direction from the Supreme Court of Texas provide additional factors for assessing the best interest of a child. *See* TEX. FAM. CODE ANN § 263.307; *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Included among these are the following: (A) the desires of the children; (B) the emotional and physical needs of the children now and in the future; (C) the emotional and physical danger to the children now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the children; (F) the plans for the children by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *See Holley*, 544 S.W.2d at 371–72. The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the children. *In re C.H.*, 89 S.W.3d at 27; *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

In addition to the foregoing factors, evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination of parental rights is in the children's best interest. *See In re C.H.*, 89 S.W.3d at 28; *see also In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013). A child's need for permanence through

the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). In making our determination, we may consider "circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence" while measuring a parent's future conduct by his or her past conduct and determine whether termination of parental rights is in the children's best interest. *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *see In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) ("[A] fact[]finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent.").

The following evidence favors the trial court's finding that termination is in the best interest of the children: (1) Mother's drug use prior to and after removal of the children; (2) Mother's failure to appear or refusal to submit to required drug testing; (3) the history of domestic violence in the household; (4) Mother's failure to complete her family service plan; and (5) the children's malnourished appearance while in Mother's care. While the children were very young at the time of trial and could not express their specific desires, Ruiz testified that both children considered their foster parents to be their real family. *See In re S.R.*, 452 S.W.3d at 369 ("[W]hen [a child is] too young to express [her] desires, the factfinder may consider whether the [child] has bonded with the foster family, [is] well-cared for by them, and [has] spent minimal time with a parent.").

While Mother testified that she believed she would have a job upon her release from incarceration, she stated on cross-examination that she was not currently employed.

17

She provided no testimony or evidence of how she would care for and provide for her children if they were returned to her, aside from stating she would continue to be "a protective and loving mother."

The Department presented evidence that the children are thriving in their current placement, and the foster family is meeting all the children's needs "and then some." The children have bonded with the foster family, and according to Ruiz, consider their foster parents to be their "mom and dad." Emmerich testified that given the opportunity, she and her husband would adopt the children.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family-service plan in holding the evidence supported the best-interest finding); *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail evidence if affirming a termination judgment). We conclude that factually sufficient evidence supports the trial court's best interest findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We overrule Mother's issue as it relates to the trial court's best interest findings.

### III.    FATHER'S ARGUMENTS

On appeal, Father only challenges the trial court's best interest finding. Father argues that the evidence "is legally and factually insufficient to support a finding that

termination was in the children's best interest."

## A.    Best Interest Analysis

The following evidence favors the trial court's finding that termination is in the best interest of the children: (1) Father's drug use after removal of the children; (2) Father's numerous failures to appear for required drug testing; (3) the history of domestic violence in the household; (4) Father's failure to complete his family service plan.

As stated above, the children were very young at the time of trial and could not express their specific desires, Ruiz testified that both children considered their foster parents to be their real family. *See In re S.R.*, 452 S.W.3d at 369. Father does not challenge the trial court's findings terminating his rights under § 161.001(b)(1)(D) or (E), finding he engaged in conduct that endangered the children's physical and emotional wellbeing. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E); *In re C.H.*, 89 S.W.3d at 28 ("While it is true that proof of acts or omissions under [§] 161.001(1) does not relieve the petitioner from proving the best interest of the child, the same evidence may be probative of both issues.") (first citing *Holley*, 544 S.W.2d at 370; and then citing *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).

Father contends that he was the non-offending parent, and that the Department did not introduce any evidence "that the children had been negatively affected" by him. We disagree. The Department presented evidence of Father's drug use and allegations of domestic violence perpetrated by Father against Mother when the children were in her possession. The Department witnesses testified that Father did not complete his family service plan which included failing to complete a parenting course after being discharged

due to threatening behavior. Further, the Department described Father as confrontational, threatening, manipulative, and non-cooperative. Father presented no evidence related to his ability to care for or provide for the children, he provided no evidence related to a stable housing environment, and the Department witnesses testified they were unsure of where Father lived for most of the pendency of the case. Additionally, while Father's counsel stated in closing that Father intends to work on his sobriety issues, no evidence was presented of how or when this would occur; rather, the Department presented evidence of Father's positive drug screens and numerous failures to appear for drug screening.

As previously discussed, the Department presented evidence that the children were flourishing in their current placement, the foster parents expressed their desire to adopt both children, and the children were strongly bonded to the foster family. Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re M.R.*, 243 S.W.3d at 820–21 (holding evidence factually sufficient to support best interest finding because parents exposed children to domestic violence and drug abuse, mother had failed to obtain housing and employment, and children flourished in foster care); *see also In re A.B.*, 437 S.W.3d at 503 (recognizing an appellate court need not detail evidence if affirming a termination judgment). We conclude that factually sufficient evidence supports the trial court's best interest findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We overrule Father's sole

issue.

## IV.   CONCLUSION

The trial court's judgment is affirmed as to both Mother and Father.

NORA L. LONGORIA
Justice

Delivered and filed on the
4th day of August, 2022.